UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                          Bankruptcy No. 03-32020
                                                                Chapter 7
Kelly Glatt,

            Debtor.
_____/

Legendary Leasing, Inc.,                                        Adversary No. 04-7008

            Plaintiff,

vs.

Kelly Glatt,

            Defendant.
_____/

**MEMORANDUM AND ORDER**

    By Complaint filed February 9, 2004, Plaintiff Legendary Leasing, Inc. initiated this adversary proceeding seeking determinations that Debtor/Defendant Kelly Glatt is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2) and (5) and that an outstanding debt owed by the Debtor to Legendary Leasing in the amount of $9,251.00 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). By Answer filed March 8, 2004, the Debtor denies the allegations.

    The matter was tried before the Court on May 26, 2004. Another adversary proceeding initiated in this bankruptcy case, Legendary Loan Link, LLP vs. Glatt, Adversary No. 04-7009,

involves similar facts and issues, and was tried at the same time.[1] The following constitutes the Court's findings of fact and conclusions of law:

## I. FINDINGS OF FACT

The Debtor is 22 years old. He did not graduate from high school, but has a high school equivalency degree. In January 2002, he leased a 260-acre ranch and started a horse training and shoeing business.

Roger Jahner, who was doing business with the Debtor, introduced the Debtor to Jahner's friend, Delmar A. Sukut. Sukut engages in custom haying and harvesting during the summer and drives truck and leases cattle and machinery during the winter. The Debtor asked Sukut to finance his purchase of horses after applying to banks for loans without success. Sukut agreed and bought several horses for the Debtor. The Debtor and Sukut signed an invoice on April 17, 2002, indicating Sukut purchased six horses for the Debtor in the total amount of $5,000.00, and the Debtor received a $2,000.00 cash advance from Sukut. According to Sukut's deposition testimony, he and the Debtor did not have an agreement as to a payment schedule for the debt, but they were going to put together a security agreement and payment schedule as soon as they were done buying horses.

Sukut stated he was unaccustomed to this type of transaction because he typically deals only in cattle, so he contacted Bill Thovson for assistance in May 2002. Thovson and Sukut had

---

[1] A separate Order will be entered in Legendary Loan Link, LLP vs. Glatt, Adv. No. 04-7009.

2

worked together in 1996 or 1997, and they were reintroduced in 2002 through Jahner, a client of Thovson.

Thovson is the founder and 90% owner of Legendary Loan Link and the founder and full owner of Legendary Leasing, the plaintiff in this case. Sukut told Thovson he loaned the Debtor money and was interested in having Thovson prepare the paperwork to secure the transactions. Thovson and Sukut also discussed Thovson purchasing the loan from Sukut, and Thovson drafted the appropriate documents accordingly. Sukut paid Thovson $200.00 for this service and signed an assignment of his right to receive payment from the Debtor to Thovson.

The Debtor had previously sought lease arrangements with Thovson that Thovson refused. After the launch of his business, the Debtor again approached Thovson seeking to lease a stock trailer, fencing panels and gates for use in his horse operation. Thovson learned that Jahner sublet a trailer to the Debtor and that the Debtor made payments regularly. Based on Jahner's experience with the Debtor, Thovson determined the Debtor had demonstrated his ability to make prompt payments, and he decided to lease the trailer, fencing panels and gates to the Debtor.

On July 19, 2002, the Debtor drove to Fargo, North Dakota to meet with Thovson regarding the lease agreement. The Debtor testified he arrived prepared to sign the lease agreement, but Thovson informed him he had to sign the loan documents Thovson prepared at Sukut's request before Thovson would lease to the Debtor. According to Thovson, he needed consideration for the lease transaction, so he required the Debtor sign the loan documents to get the lease.

3

The Debtor signed a $7,000.00 promissory note payable to Thovson in annual installments and a security agreement providing that collateral for the loan is all chattel, particularly the Debtor's horse inventory. He also signed a financing statement filed with the North Dakota Secretary of State and a disclosure statement and letter of understanding. Lastly, he signed the lease agreement documents for the rental of three 16' gates, 65 fencing panels, and a 1986 Rawhide 6' x 16' stock trailer. The terms of the lease required the Debtor to make 48 monthly installments in the amount of $250.00, beginning July 15, 2002 and ending June 15, 2006. At the end of the lease, the Debtor had the option to purchase the leased property for $711.00. A receipt from B&W Livestock dated May 13, 2002 indicates the sale of 65 fencing panels at $57.00 each to Legendary Leasing to be delivered to the Debtor. The Debtor received the trailer and three gates, but only 40 of the fencing panels.

The Debtor made the $250.00 monthly lease payments for a few months with money generated through his horse business. On December 31, 2002, however, the Debtor lost his lease of the real property and had to be off the property by January 2003. The Debtor testified he planned to get a job, but also to keep his horse business operating by shoeing horses, enabling him to continue making the lease payments. Although the Debtor defaulted within six months of the lease agreement, Thovson did not retrieve the leased property from the Debtor. At the time, the Debtor told Thovson that he wanted to keep the property, and the Debtor was always within 30 days of payment. Thovson eventually got the trailer back, but not the fencing panels and the gates. The Debtor testified the gates were left on the real property the Debtor had leased.

AO 72A
(Rev.8/82)

In early January 2003, the Debtor sold the 40 fencing panels for approximately $1,750.00, remitted $750.00 to Thovson, and used the remainder to pay living expenses. The Debtor testified he incorrectly thought the approximately $1,000.00 he kept from the sale of the fencing panels would get him through the "rough patch." He testified the horse business is slow in the winter, and he was simply unable to generate much income.

The Debtor filed a voluntary Chapter 7 petition for bankruptcy relief on November 13, 2003.

## II. CONCLUSIONS OF LAW

Legendary Leasing argues both for the denial of a bankruptcy discharge to the Debtor and for a determination of nondischargeability of the obligation owed on lease to Legendary Leasing by the Debtor in the total amount of $9,251.00.

A.  11 U.S.C. § 727(a)

Legendary Leasing seeks to have the Debtor denied a discharge under 11 U.S.C. § 727(a)(2), and (a)(5). Section 727(a) provides in relevant part:

> (a) The court shall grant the debtor a discharge, unless—
>
> * * *
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>  (A) property of the debtor, within one year before the date of the filing of the petition; or
>
>  (B) property of the estate, after the date of the filing of the petition;

5

\* \* \*

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a).

Denying a debtor a discharge is a drastic remedy. See In re McLaren, 236 B.R. 882, 893 (Bankr. D.N.D. 1999). In light of the policy implications favoring debtors under the Bankruptcy Code, section 727 must be construed liberally in favor of the debtor and strictly against the objecting party, with the burden of proof thereunder resting squarely upon the latter. See id. The standard of proof is a preponderance of the evidence. See id.

### 1. Section 727(a)(2)(A)

Legendary Leasing argues the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) because the Debtor intended to hinder, delay, or defraud Legendary Leasing by selling the fencing panels in violation of the lease agreement.

The elements essential to barring a discharge under section 727(a)(2)(A) are:

> (1) that the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay or defraud either a creditor or an officer of the estate.

Kaler v. Craig (In re Craig), 195 B.R. 443, 449 (Bankr. D.N.D. 1996). An intent to defraud can be established by circumstantial evidence or from inferences drawn from a debtor's course of conduct. See id. at 450. Courts have considered several factors in determining whether a debtor acted with actual intent to hinder, delay or defraud: (1) lack or inadequacy of consideration; (2)

6

family, friendship or other close relationship between the transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions or course of conduct after the pendency or threat of suit; (9) instrument affecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift to family member; and (11) general chronology of events and transactions under inquiry. Riley v. Riley (In re Riley), 305 B.R. 873, 878-79 (Bankr. W.D. Mo. 2004).

The Court finds that Legendary Leasing has failed to prove the Debtor sold the fencing panels with an intent to hinder, delay or defraud. He testified that he remitted $750.00 of the proceeds to Thovson and used the remaining proceeds in the approximate amount of $1,000.00 to pay living expenses. Although circumstantial evidence can establish an intent to defraud, Legendary Leasing did not offer evidence as to either the existence of any of the factors listed above or any other circumstantial evidence to support its claim. Accordingly, section 727(a)(2) cannot serve as a basis for denial of discharge in the case.

2. Section 727(a)(5)

Legendary Leasing argues the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5) because the Debtor failed to explain the loss of the fencing panels and gates and the disposition of the proceeds of the same.

Section 727(a)(5) of the Bankruptcy Code denies a debtor a discharge if he or she has failed to explain satisfactorily any loss or deficiency of assets to meet his or her liabilities. The

7

party objecting to discharge has the burden of proving that the debtor at one time *owned* substantial and identifiable assets that are no longer available for his or her creditors. See Gray v. Gray (In re Gray), 295 B.R. 338, 345 (Bankr. W.D. Mo. 2003); see also Dzikowski v. Chauncey (In re Chauncey), 308 B.R. 97, 103 (Bankr. S.D. Fla. 2004); Huchteman v. Ingalls (In re Ingalls), 297 B.R. 543, 548 (Bankr. C.D. Ill. 2003); First State Bank of Newport v. Beshears (In re Beshears), 196 B.R. 468, 472-73 (Bankr. E.D. Ark. 1996). Once the plaintiff's burden is satisfied, it is incumbent upon the debtor to provide a satisfactory explanation for the loss. Id.

The assertion by Legendary Leasing that the Debtor should be denied a discharge because of his failure to explain the loss of the fencing panels and gates cannot succeed because the Debtor did not own the fencing panels and gates. Moreover, the Debtor explained the gates were left on the real property he had leased, and he sold the 40 fencing panels. Legendary Leasing therefore failed to meet its burden of proof under section 727(a)(5).

B.  11 U.S.C. § 523(a)

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code. Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002). Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993). The standard of proof for exceptions to discharge under 11 U.S.C. § 523(a) is the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991).

Here, the outcome of the dischargeability issue requires a determination of whether the debt owed to Legendary Leasing by the Debtor was "for money, property, services, or an

8

AO 72A
(Rev.8/82)

extension, renewal, or refinancing of credit, to the extent obtained by . . . a false representation," 11 U.S.C. § 523(a)(2)(A), "for fraud or defalcation while acting in a fiduciary capacity," 11 U.S.C. § 523(a)(4), or "for willful and malicious injury by the debtor to another entity or to the property of another entity," 11 U.S.C. § 523(a)(6). If Legendary Leasing proves any of these exceptions exist, the debt is nondischargeable.

### 1. Section 523(a)(2): FALSE REPRESENTATION

Legendary Leasing argues the Debtor's outstanding obligation on the lease is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) because the Debtor's execution of the lease agreement and subsequent failure to comply with its terms constitutes a false representation.

A debt for money, property, services, or an extension, renewal, or refinancing of credit, is nondischargeable to the extent that the debtor procured such items by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). To establish nondischargeability under section 523(a)(2)(A), the following elements must be proved:

(1) the debtor made a representation;
(2) the debtor knew the representation was false at the time it was made;
(3) the representation was deliberately made for the purpose of deceiving the creditor;
(4) the creditor justifiably relied on the representation; and
(5) the creditor sustained the alleged loss as the proximate result of the representation having been made.

Burt v. Maurer (In re Maurer), 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); Simek v. Erdman, (In re Erdman) 236 B.R. 904, 910 (Bankr. D.N.D. 1999). In assessing a debtor's knowledge of the falsity of the representation, the court must consider the knowledge and experience of the debtor. The Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (citing In re Duggan, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). A false representation

9

made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth and satisfies the knowledge requirement. Id.

The Debtor made the representation that he would comply with the terms of the lease agreement. Legendary Leasing falls short, however, in establishing that the Debtor knew at the time the representation was made, i.e., on July 19, 2002, when he executed the lease documents, that he would not comply with their terms. The Debtor is a young man with limited experience and education, and Legendary Leasing did not offer circumstantial evidence to support a finding that the Debtor should have known he would not comply with the lease agreement. In short, Legendary Leasing has failed to carry its burden of proving the Debtor knew or should have known the representation that he would comply with the lease agreement was false at the time it was made, and its claim under section 523(a)(2)(A) fails.

## 2. Section 523(a)(4): FIDUCIARY CAPACITY

Legendary Leasing argues the Debtor's obligation under the lease agreement is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the Debtor deliberately disposed of the fencing panels and converted the proceeds while acting in a fiduciary capacity.

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). To prevent the discharge of the Debtor's debt under section 523(a)(4), it is incumbent upon Legendary Leasing to establish the following two elements: (1) a fiduciary relationship existed between the Debtor and Legendary Leasing; and (2) the Debtor committed fraud or defalcation in the course of that fiduciary relationship. Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

10

Whether a relationship is a fiduciary relationship within the meaning of section 523(a)(4) is a question of federal law. Id. The fiduciary relationship must arise from an express or technical trust, and therefore, the fiduciary relationship required under section 523(a)(4) is more narrowly defined than that under the general common law. Id. As a result, the broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable. Id. A merely contractual relationship is less than what is required to establish the existence of a fiduciary relationship. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993) (per curiam).

In the instant case, the lease agreement did not impose an express or technical trust. The Debtor was not acting in a fiduciary capacity toward Legendary Leasing; rather, the relationship between the Debtor and Legendary Leasing was merely contractual. As such, Legendary Leasing has failed to establish the first element of "fraud or defalcation while acting in a fiduciary capacity" under section 523(a)(4).

3. Section 523(a)(6): WILLFUL AND MALICIOUS INJURY

Legendary Leasing argues the Debtor's obligation is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) because the Debtor willfully and maliciously injured Legendary Leasing by selling the fencing panels and failing to surrender the proceeds.

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In this context, the term willful means deliberate or intentional. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999). The injury, and not merely the act leading to the injury, must be deliberate or intentional. Geiger, 523 U.S. at 61-62. Malice

11

requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm. Madsen, 195 F.3d at 989. Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies. Barclays Amer./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir.1985). The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent some additional aggravated circumstances. Johnson v. Logue (In re Logue), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003). Conduct which is certain or almost certain to cause financial harm to the creditor is required. Id.

Generally, debts for breach of contract are not excepted from discharge under section 523(a)(6). Cutler v. Lazarra (In re Lazarra), 287 B.R. 714, 722 (Bankr. N.D. Ill. 2002). This is true even in the case of an intentional breach of contract. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1205 (9th Cir. 2001), cert. denied, Jercich v. Petralia, 533 U.S. 930 (2001). Because the debt in this case arises from breach of the parties' lease agreement, it does not fall within the exception under section 523(a)(6).

Although the Debtor conceded in his pleadings and at trial that his obligation on the lease is nondischargeable in the amount of $2,436.30, the Bankruptcy Code does not provide for such a determination based on the causes of action presently before the Court.[2] Based on the

---

[2] The Court notes that this adversary proceeding was not commenced to determine the validity, priority, or extent of Legendary Leasing's lien or other interest in the Debtor's property. Therefore, the Court will not provide a determination of the value of the secured and unsecured portions of the debt(s). This is better left to the state courts after the discharge is entered and the stay is lifted. In the meantime, the Debtor is always free to make agreed payments to any creditor.

12

foregoing, the Complaint of Plaintiff Legendary Leasing, Inc. predicated on sections 548 and 727 of the Bankruptcy Code is DISMISSED.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this June 21, 2004.

WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT

Notice of Entry
Under F.R.B.P 9022 (a)
FILED

JUN 21 2004

Clerk
U.S. Bankruptcy Court
District of North Dakota

```
Entered on docket & copies mailed 06/21/04 to:
U.S. Trustee
Michael Wagner, Trustee, Bismarck, ND
Atty. Jeremy Holmes, Fargo, ND
Atty. Dennis Lindquist, Mandan, ND
Kelly Glatt, Defendant
```

13

AO 72A
(Rev.8/82)